IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

---

| | |
|---|---|
| **TERRELL PARKER and others similarly situated,** | |
| **Plaintiffs,** | No.: 3:09-0706 |
| v. | **DISTRICT JUDGE ECHOLS** |
| **SUNTRUST BANK**, *et al*, | **MAGISTRATE JUDGE GRIFFIN** |
| **Defendants.** | **CLASS ACTION** |
| | **JURY DEMANDED** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

Plaintiff moves for final approval of the proposed class action settlement. The settlement provides substantial, immediate, and certain benefits to the Settlement Class. Furthermore, the settlement is fair, reasonable, and adequate. After the Court preliminarily approved this settlement on December 21, 2009, Defendant SunTrust Bank (hereafter "SunTrust") began the notice process. Notice of the settlement terms was provided to the Settlement Class members through three different mediums: (1) notice to the Settlement Class was published on two separate occasions in *The Tennesseean*, which is a newspaper of general circulation in the geographic area where the ATM at Issue is located; (2) notice was posted by Defendant on the ATM at Issue; and (3) notice was posted on a website, created, monitored, and maintained by Defendant. To date, no objections to the settlement have been received.

Due to the nature of the claims involved and the clear relief provided to the

Settlement Class, Plaintiff respectfully submits that this settlement is more than reasonable, has been properly administered, and should be given final approval.

## THE LITIGATION AND SETTLEMENT

### A. Background of the Case

Plaintiff filed this action on July 31, 2009 on behalf of himself and other putative class members. Plaintiff alleges SunTrust violated 15 U.S.C. § 1693 *et seq.*, which is commonly known as the Electronic Fund Transfers Act and 12 C.F.R. § 205 *et seq.*, commonly known as Regulation E, which contains regulations promulgated by the Board of Governors of the Federal Reserve System to implement the Act (the Act and Regulation E shall hereinafter be collectively referred to as the "EFTA"). Specifically, Plaintiff asserts that SunTrust failed to provide notice of transaction fees on the ATM at Issue.

The EFTA specifically requires that ATM machines have a posted notice attached on or at the machine informing consumers of the imposition of an ATM surcharge. 15 U.S.C. § 1693b(d)(3). 15 U.S.C. § 1693b(d)(3)(B), and its implementing regulation, 12 C.F.R. § 205.16(c) specify the notice to be provided to consumers:

> *(c) Notice requirement.* To meet the requirements of paragraph (b) of this section, an automated teller machine operator must comply with the following:
>
> (1) *On the machine.* Post in a prominent and conspicuous location on or at the automated teller machine a notice that:
>
> (i) A fee will be imposed for providing electronic fund transfer services or for a balance inquiry; or
>
> (ii) A fee may be imposed for providing electronic fund transfer services or for a balance inquiry, but the notice in this paragraph (c)(1)(ii) may be substituted for the notice in paragraph (c)(1)(i) only if there are circumstances under which a fee will not be

2

imposed for such services; and

> (2) *Screen or paper notice.* Provide the notice required by paragraphs (b)(1) and (b)(2) of this section either by showing it on the screen of the automated teller machine or by providing it on paper, before the consumer is committed to paying a fee.

15 U.S.C. § 1693b(d)(3)(C), and its implementing regulation, 12 C.F.R. § 205.16(e), also provide that no fee may be imposed by an ATM operating in connection with any electronic fund transfer initiated by a consumer for which a notice is required *unless* the consumer is provided the notices required pursuant to 12 C.F.R. § 205.16(c). Specifically, 15 U.S.C. § 1693b(d)(3)(C) states in relevant part:

> (C) **Prohibition on fees not properly disclosed and explicitly assumed by consumer.** No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless – (i) the consumer receives such notice in accordance with subparagraph (B); and (ii) the consumer elects to continue in the manner necessary to effect the transaction after receiving such notice.

Similarly, 12 C.F.R. § 205.16(e) provides:

> (e) *Imposition of fee.* An automated teller machine operator may impose a fee on a consumer for initiating an electronic fund transfer or a balance inquiry only if
>
> (1) The consumer is provided the notices required under paragraph (c) of this section, and
> (2) The consumer elects to continue the transaction or inquiry after receiving such notices.

SunTrust filed an Answer on September 28, 2009, admitting that the ATMs at Issue did not have an on-machine notice on the date Plaintiff alleged to have used the ATM at Issue. The initial case management conference was held telephonically on September 8, 2009. At the conference, the parties agreed to reschedule the case management conference for October 8, 2009. This would give the parties time to discuss the

3

possibility of settlement. A second case management conference was held by telephone on October 8, 2009, at which time the parties advised that they had been engaged in class settlement discussions and believed they would reach an agreement in the next couple of weeks. As expected, the parties did reach an agreement in principle, which was memorialized in writing between the parties.

Next, the parties began drafting a formal Settlement Agreement and other documents necessary for approval of the settlement on a class basis. Ultimately, the parties executed a Class Action Settlement Agreement ("Settlement Agreement"). Pursuant to the Settlement Agreement, the Parties have agreed to certification, for settlement purposes only, of the following Class:

> All consumers who, from August 1, 2008 to August 7, 2009, used the ATM operated by SunTrust Bank located at 1109 Murfreesboro Road, Franklin, Williamson County, Tennessee, and/or at 15568 Old Hickory Boulevard, Nashville, Davidson County, Tennessee, and were charged a transaction fee by SunTrust Bank for making a cash withdrawal from that ATM.

### B. The Terms of the Settlement

The proposed settlement includes the following basic terms, as set forth in the Settlement Agreement:

**5.2 Settlement Fund.** Within fourteen (14) days after a Preliminary Approval Order is entered, Defendant shall pay $125,000 into a separate account entitled "EFTA – *Parker v. SunTrust Bank* Settlement Fund," which will constitute the Settlement Fund. Subject to Court approval, the Settlement Fund shall be disbursed, within ten (10) days of the Effective Date, as follows:

**5.21 Payment to Class Representative.** Class Representative shall receive $2,500.00 for his individual claim and as an incentive award for his services as Class Representative. Defendant agrees not to object to the Court awarding this amount to Class Representative and consents to such an award to Class Representative.

**5.22 Payment to Class-Counsel.** Class Counsel shall receive $30,000.00 in full satisfaction of all reasonable attorneys' fees and costs. Defendant agrees not to

4

object to the Court awarding this amount to Class Counsel and consents to such a payment to Class Counsel.

   **5.23 Class Recovery**.  The amount remaining in the Settlement Fund after deducting the amounts set forth in 5.21 and 5.22 above, shall be divided *pro rata* among Participating Claimants who are entitled to payment pursuant to Section 5.1 above; provided, however, that no Class Member shall receive payment from the Settlement Fund in an amount not to exceed $250.00.  Each Class Member shall only be eligible to receive a *pro rata* payment, regardless of whether that Class Member used the ATMs at Issue multiple times.

   **5.24 *Cy Pres*.**  Any money remaining in the Settlement Fund, if any, after payments are made pursuant to paragraphs 5.21, 5.22, and 5.23 above, shall be paid as a *cy pres* award to a mutually agreeable charity.  If the Parties cannot agree on a charity, then SunTrust shall select a charity to receive 50% of the monies remaining in the Settlement Fund and Class Counsel shall select a second charity to receive the remaining 50% of the Settlement Fund; however, neither Party may select a charity in which the Parties, Class Counsel, or SunTrust's counsel of record have a financial interest.

   **C. <u>Notice was Provided to Potential Class Members</u>**

Notice of the settlement terms was provided to the Settlement Class members, as set forth in the Settlement Agreement:

   **7.11 Publication.**  Notice to the Settlement Class shall be published on two separate occasions, no earlier than thirty (30) days and no later than forty-five (45) days after the date of entry of a Preliminary Approval Order and in the form and substance set forth in **Exhibit B** hereto in *The Tennessean*.  The publication notice shall be a display ad of at least one-quarter (1/4) page in size.

   **7.12 Posted Notice.**  Notice to the Settlement Class shall be posted by Defendant, starting no later than thirty (30) days after the date of entry of a Preliminary Approval Order and continuing for ninety (90) days, which shall also be the last date for Class Members to opt out, on the ATMs at Issue in the form and substance set forth in **Exhibit C** hereto.

   **7.13 Website.**  Notice to the Settlement Class shall be posted, starting no later than twenty-one (21) days after entry of a Preliminary Approval Order and continuing for ninety (90) days, which shall also be the last date for Class Members to opt out, on the internet at a website created, monitored, and maintained by Defendant in the form and substance set forth in **Exhibit D** hereto.

The publication and website notices explained the general terms of the settlement as set forth above and explained that the class members' EFTA claims, for the violations

5

alleged in the Plaintiff's Complaint, would be forever released and compromised upon final approval of the proposed settlement. The notices also explained the deadlines and procedures for: (1) filing objections; (2) opting out of the proposed Class; and (3) submitting claim forms. The publication and website notices also advised putative class members of the date, time, and location of the Fairness Hearing. The ATM, website, and publication notice provided a phone number to call with questions. The notice posted on the ATMs also referred class members to the website notice. As a result of the various notices, Class Counsel received multiple calls inquiring as to the Settlement. *See* Aff. of Clinton H. Scott (attached hereto as Ex. A); Aff. of J. Brandon McWherter (attached hereto as Ex. B).

Rule 23(c)(2)(B) requests that class members be given "the best notice practicable under the circumstances. . . ." Rule 23(e)(1) requires that, in class settlements, notice be given "in a reasonable manner to all class members who would be bound by the proposal." In this case, the Court was satisfied, upon preliminary approval, of the impracticality of providing individual notice. Notice has been provided in the aforementioned manner because it is impracticable and not cost effective to provide notice directly to the Class Members. Direct notice would require the issuance of subpoenas to at least ninety (90) different financial institutions in order to attempt to identify the names and addresses of the Class Members, and the ATM at Issue is in full compliance with EFTA as of July 13, 2009. *See* Aff. of Susan S. Craft, Senior Counsel, SunTrust Bank (filed separately by Defendant).

## THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.     The Approval Process and Standard

The court should approve a class settlement if, following a hearing, the court

6

determines that the settlement "is fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(1)(C). In making this determination, the court evaluates the proposed class action settlement "in light of the general federal policy favoring the settlement of class actions." *UAW v. GM*, 2006 WL 891151, at *12 (E.D. Mich. March 31, 2006) (attached as Appx. 1). A district court may not approve the settlement of a class action lawsuit unless it determines that the settlement is fair, adequate, and reasonable, as well as consistent with the public interest. *See United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). While Fed. R. Civ. P. 23(e) does not provide a definitive standard for determining whether a particular class settlement should be granted final approval, federal courts have developed procedures for evaluating the fairness and reasonableness of class action settlements. Where, as here, the parties propose a class-wide settlement, they must obtain the Court's approval of the proposed settlement pursuant to a three-step process described in the *Manual for Complex Litigation* (3d ed. annotated 2003), § 30.41. The three steps are:

(1) Preliminary approval of the proposed settlement at an informal hearing;

(2) Dissemination of mailed and/or published notice of the settlement to the Class Members; and

(3) A "formal fairness hearing," or final approval hearing, at which Class Members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Id*. This procedure serves the dual function of safeguarding class members' procedural due process rights and enabling the Court to fulfill its role as the guardian of the class' interests. This Court has already undertaken and directed the implementation of the first two phases of the settlement evaluation process, *i.e.*, preliminary approval and dissemination of notice to the Settlement Class. Now that the Settlement Class response

7

has been documented, the Court is in a position to conclude the settlement evaluation process with a final fairness hearing, and the determination as to whether final approval should be granted.

The decision to approve or reject a proposed class action settlement is committed to the Court's sound discretion. *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion); *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990) (same). In exercising that discretion, the court "may limit the fairness hearing to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 567 (6th Cir. 2001) (quoting *United States v. Oregon*, 913 F.2d 576, 582 (9th Cir. 1990)).

Although this Court must evaluate the settlement to ensure it is fair, reasonable and adequate, a full trial is not contemplated. The settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. *UAW v. Ford*, 2006 WL 1984363, at *21 (E.D. Mich. July 13, 2006) (attached as Appx. 2) (quoting *Officers for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 625 (9th Cir. 1982)).

Courts in this circuit have listed factors relevant to a court's evaluation of a class settlement. These factors are:

(1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement;

(2) the risks, expense, and delay of further litigation;

(3) the judgment of experienced counsel who have competently evaluated the strength of their proofs;

(4) the amount of discovery completed and the character of the evidence uncovered;

(5) whether the settlement is fair to the unnamed class members;

(6) objections raised by class members;

(7) whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; and

(8) whether the settlement is consistent with the public interest.

*UAW v. GM*, 2006 WL 891151 at *14 (E.D. Mich. March 31, 2006); *In re Delphi Corp. Securities, Derivative & "ERISA" Litigation*, 248 F.R.D. 483, 496 (E.D. Mich. 2008) (same). The court "may choose to consider only those factors that are relevant to the settlement and may weigh particular factors according to the demands of the case." *IUE-CWA*, 238 F.R.D. at 594-595; *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-1206 (6th Cir. 1992) ("The district court enjoys wide discretion in assessing the weight and applicability of these factors.").

## B. Federal Courts Have Routinely Approved Class Action Settlements Similar to the Case at Bar.

The United States Supreme Court has confirmed not only the viability but the desirability of settlement classes. *See Amchem Prods. v. Windsor*, 521 U.S. 591 (1997). In cases such as the this, involving issues of consumer protection, courts have consistently held that the use of the class action mechanism is "desirable and should be encouraged." *Watkins v. Simmons & Clark, Inc.*, 618 F.2d 398, 404 (6th Cir. 1980). Accordingly, federal courts have routinely certified classes and approved settlements relating to claims for statutory damages under the EFTA's ATM fee disclosure

9

provisions. *See*, *e.g.*, *Parker v. First-Citizen Bank & Trust Company,* 09-cv-0588 (M.D. Tenn.) (Campbell, J.) (class certified and final settlement approval granted); *Jackman v. Global Cash Access Holdings*, 09-cv-897 (W.D. Pa.) (McVerry, J.) (class certified and final settlement approval granted); *Nolf v. Allegheny Bank of Pittsburgh*, 09-cv-645 (W.D. Pa.) (Bissoon, J.) (class certified and final settlement approval granted); *Polevoy v. Devon Bank*, 08-cv-4822 (N.D. Ill.) (Kennelly, J.) (class certified and final settlement approval granted); *Chernyavsky v. Inland Bank & Trust*, 08-cv-4009, (N.D. Ill.) (Zagel, J.) (class certified and final approval granted); *Stone et al. v. Corus Bank, N.A.*, 08-cv-1746, (N.D. Ill.) (Bucklo, J.) (class certified and final settlement approval granted); *Ochart v. Broadway Bank*, 08-cv-4893, (N.D. Ill.)(Castillo, J.) (class certified and final settlement approval granted); *Anthony v. Fifth Third Bank (Chicago)*, 08-cv-4359, (N.D. Ill.) (Schenkier, J.) (class certified and final settlement approval granted); *Arbelo, et al. v. Charter One Bank*, 08-cv-1516, (N.D. Ill.) (Cox, J.) (class certified and final settlement approval granted); *Escalante v. Lincoln Park Savings Bank*, 08-cv-6152 (N.D. Ill.) (Ashman, J.) (class certified and final settlement approval granted); *Bruner v. AmericaUnited Bank & Trust Company*, 08-cv-124, (N.D. Ill.) (Nolan, J.) (class certified and final settlement approval granted); *Smith v. Credit Union 1*, 07-cv-5939 (N.D. Ill.) (Guzman, J.) (class certified and final settlement approval granted); *Siragusa v. Corporate America Family Credit Union*, 08-cv-4007 (N.D. Ill.) (Gottschall, J.) (class certified and final settlement approval granted); and, *Marsh v. ATM Capital Management Inc.*, 07-cv-5808, (N.D. Ill.) (Coar, J.) (class certified and final settlement approval granted).

## C. This Settlement Is Fair, Reasonable, Adequate and and Should Be Approved

Each of the *UAW* factors described above suggests that the settlement should be approved.

### 1. The Likelihood of Success on the Merits Weighed Against the Relief Offered in the Settlement and the Risks of Future Litigation Strongly Favor Approval

Here, the first and second factors listed in *UAW v. GM* are the most important. A plaintiff's likelihood of success at trial is "by far the most important factor" in evaluating a class action settlement. *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1323 (S.D. Fla. 2007). In weighing the likelihood of success on the merits against the relief offered in the litigation, the "ultimate question ... is 'whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *IUE-CWA*, 238 F.R.D. at 594. *See also*, *Shy v. Navistar Int'l Corp.*, 1993 WL 1318607, at *2 (S.D. Ohio May 27, 1993) ("It is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, taken as a whole, must be fair, adequate and reasonable.").

In this case, Plaintiffs believe they would eventually prevail at trial, but not without protracted litigation. As discussed above, however, the likelihood of success must be weighed against the relief offered in the litigation. Here, Plaintiff and the Settlement Class do not claim any actual harm. Instead, they seek to recover statutory damages based on the Defendant's violation of the EFTA. Because suit was brought as a class action, the Plaintiff and Settlement Class may recover "such amount as the court may allow, except that (i) as to each member of the class no minimum recovery shall be

11

applicable, and (ii) the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same person shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the Defendant." 15 U.S. C. § 1693m(2)(B). With regard to SunTrust, the lesser would be $500,000. Furthermore, no class member may recover in excess of $1,000. *Id.* (2)(A).

Clearly, the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued. Here, the Settlement Class can recover up to $250 per person, which is well within the range of potential outcomes at the trial of this matter, especially considering that there is no minimum recovery in a class action such as this. Furthermore, the $250 available to the members of the Settlement Class is far in excess of the transaction fee charged by SunTrust in violation of the EFTA.

Likewise, the risks involved with future litigation are great. Further litigation will take time, cost money, and might not yield any recovery above and beyond that which has already been agreed to be the parties. This does not include the potential defenses available to Defendant, which if successful would negate any recovery by the class members. Consequently, a comparison of the risks associated with further litigation versus resolution of the matter via the proposed settlement leads to only one conclusion—the proposed settlement is fair, adequate and reasonable, and should be approved.

### 2. Well-Informed Class Counsel Support the Settlement

The judgment of the parties' counsel that the settlement is in the best interest of the settling parties "is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. GM*, 2006 WL 891151, at *18 (citing *Mich. Hosp. Ass'n v. Babcock*, No. 5:89-CV00070, 1991 U.S. Dist. LEXIS 2058, at *6 (W.D. Mich. Feb. 11, 1991) ("It

12

is ... well recognized that the court should defer to the judgment of experienced counsel who has competently evaluated the strength of the proofs.")); *see Smith v. Ajax Magnethermic Corp.*, Slip Copy, 2007 WL 3355080, at *5 (N.D. Ohio Nov. 7, 2007) (attached as Appx. 3) ("The Sixth Circuit has held that, in the context of approving class action settlements, the Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'").

Class Counsel are reputable practitioners and trial counsel experienced in complex class action litigation who have adequately assessed the strengths of their respective claims and positions. *See UAW v. GM*, 2006 WL 891151, at *18. "Under the law, their collective judgment in favor of the Settlement is entitled to considerable weight." *Id.* at *18; *see also*, *Ass'n for Disabled Americans, Inc., Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002) ("the Court must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel'"). Plaintiff's Class Counsel has regularly engaged in major complex consumer litigation of size, scope and complexity similar to this case. *See* Affidavit of Justin Gilbert, attached as Ex. A; Affidavit of J. Brandon McWherter, attached as Ex. B; and Affidavit of Clinton H. Scott, attached as Ex. C. They have successfully prosecuted many and varied class actions and other complex litigation, and are well-qualified to evaluate this settlement. The judgment of Plaintiff's Class Counsel indicates that the settlement is fair, and strongly supports settlement approval.

> 3. **The Amount of Discovery Completed and The Character of the Evidence Uncovered**

In evaluating a proposed settlement, the Court need not possess sufficient "evidence to decide the merits of the issue, because the compromise is proposed in order

13

to avoid further litigation." 4 Newberg on Class Actions § 11:45 (4th ed. 2002). Instead, the district judge need only have "sufficient facts before him to intelligently approve or disapprove the settlement." *International Union v. Ford Motor Co.*, Slip Copy, 2006 WL 1984363, at *25 (E.D. Mich. July 13, 2006) (citing *Epstein v. Wittig*, 2005 WL 3276390, at *7 (D. Kan. Dec. 2, 2005) (unpublished).

The initial discovery in this case prior revealed the potential class size in this case consisted of a maximum of 3,200 class members. The main issue in the litigation centered on whether or not SunTrust's failure to post physical notice was the result of a bona fide error or good faith belief that it had complied with the EFTA.

### 4. The Settlement is Fair to All Class Members

This settlement is fair to the Class Members. This lawsuit does not allege that Plaintiff or Settlement Class members suffered actual monetary harm. No Settlement Class member is out anything beyond the transaction fee charged by SunTrust. Therefore, this is not a case where the Settlement Class member is only recovering a small portion of its damages. Here, the class members suffered no damages yet still could make a claim of up to $250 per person, which is far in excess of the transaction fee charged by SunTrust. As stated above, this lawsuit alleges a statutory violation and seeks statutory damages. Therefore, there is no threat that SunTrust will be permitted to keep any ill-gotten gains at the expense of Settlement Class members. In fact, any unclaimed funds will be directed to a *cy pres*, as provided in the Settlement Agreement. "The use of a *cy pres* contribution is proper and acceptable in class action settlements, particularly when locating and ascertaining the status of all individual class members is prohibitively difficult or expensive." *McKinnie v. JP Morgan Chase Bank, N.A.*, 2009 WL 5217673 (E.D. Wis. Dec. 31, 2009) (attached as Appx. 4). Such is the case here.

14

### 5. No Objections to the Settlement From Class Members

No Class Member has objected to the terms of the settlement regarding the benefits secured to the class. "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2nd Cir. 2005); *Hainey v. Parrott*, 2007 WL 2752375, at *5 (S.D. Ohio Sept. 20, 2007) ("a small number of objections, particularly in a class of this size, indicates that the settlement is fair, reasonable and adequate."). Indeed, the fact that *no* Class members objected to the settlement regarding the benefits secured to the class strongly suggests that the settlement should be approved. *See also*, *Williams v. General Elec. Capital Auto Lease*, 1995 WL 765266 (N.D. Ill. 1995) (finding 15 objections to a settlement was a small number).

### 6. The Settlement is the Product of Arm's Length Negotiations, There is No Evidence of Collusion, and The Settlement is Consistent With the Public Interest

The proposed settlement was the result of intensive, arm's-length negotiations between counsel for the parties. Plaintiff's Class Counsel are experienced in the litigation, certification, trial, settlement, and claims processing of consumer cases, including nationwide class actions with many legal and factual similarities to this case. Settlement negotiations were conducted between designated representatives of the parties involving arm's-length and adversarial negotiation of settlement terms. There was not any evidence of—nor was there any—collusion between counsel. Finally, this settlement is consistent with the public interest.

15

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court grant final approval to the proposed settlement.

Dated: April 27, 2010.

>Respectfully submitted,
>
>GILBERT RUSSELL McWHERTER PLC
>
>
>By: ___/s/ Clinton H. Scott_____
>JUSTIN S. GILBERT (17079)
>J. BRANDON McWHERTER (21600)
>CLINTON H. SCOTT (23008)
>101 North Highland
>Jackson, Tennessee 38301
>Telephone: 731-664-1340
>Facsimile: 731-664-1540
>jgilbert@gilbertfirm.com
>bmcwherter@gilbertfirm.com
>cscott@gilbertfirm.com
>*Attorneys for Plaintiff and Class*

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2010, I electronically filed the foregoing with the Clerk of the Court for the Western District of Tennessee via the Electronic Filing System with notice to:

>Stephen H. Price
>STITES & HARBISON PLLC
>401 Commerce Street, Suite 800
>Nashville, TN 37219-2376
>Telephone: (615) 782-2232
>Facsimile: (615) 742-7226
>
>*Attorneys for Defendant*
>*SunTrust Bank*

and all other parties listed on the Electronic Filing Receipt.

>/s/ Clinton H. Scott_____